UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO.:3:19CR65(VLB) |
| v. | : |
| **KAREEM SWINTON** | : August 14, 2020 |

**MEMORANDUM OF DECISION ON SWINTON KAREEM SWINTON'S MOTIONS *IN LIMINE* [Dkts. 362, 363, 365, 366, 367]**

Before this Court are five evidentiary motions filed by the Defendant, Mr. Kareem Swinton ("Mr. Swinton").[1] For the reasons and subject to the limitations stated below, Mr. Swinton's Motion *in limine* to exclude the government from using conversations not directly charged [Dkt. 363] is DENIED. Mr. Swinton's motion to exclude 404(b) evidence is DENIED. [Dkt. 362]. The motion to exclude testimony based on speculation [Dkt. 365] is GRANTED. The motion concerning DEA Agent expert testimony [Dkt. 366] is GRANTED IN PART AND DENIED IN PART. Mr. Swinton's motion for a special hearing concerning pole camera photographs [Dkt. 367] is GRANTED in part.

I.  Background

By an indictment filed March 5, 2019, Mr. Swinton is charged with federal narcotics offenses, including possession with the intent to distribute, and distribution of 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. [Dkt. 21]. The indictment alleges that Mr. Swinton conspired with

---

[1] Mr. Swinton has also filed a motion for the production of agent notes, [Dkt. 364], which the Court will address in a separate ruling.

twelve other individuals located in Connecticut to distribute cocaine. *Id.* On March 18, 2020, Mr. Swinton and four co-defendants were charged by a superseding indictment adding an enhancement provision for Mr. Swinton's prior federal narcotics conviction. [Dkt. 348]. This indictment increased the statutory penalties from a 10-year mandatory minimum prison term to a 15-year mandatory minimum, and increased the supervised release terms and fine provision. *Id.* at 2.

The Government's pretrial filings indicate that, among other evidence, it plans to introduce phone call evidence from calls Mr. Swinton placed while in Maryland, New Jersey, and Connecticut. [Dkt. 385]. At this time, the Government cannot conclusively state whether it will introduce other-crimes evidence as part of its case-in-chief because it does not know what Mr. Swinton's claims at trial will be. [*Id.* at 1-2]. The Government also plans to call DEA officers to testify as expert witnesses to coded language in text messages between defendants and introduce photographic evidence which allegedly shows Mr. Swinton entering Hat Boyz in Norwich, CT. *See* [Dkts. 366, 367].

## II. Motion *in Limine* to exclude the government from introducing phone call evidence & Motion in *Limine* to exclude all other-crimes evidence under Federal Rule of Evidence 404(b)

At issue are phone calls which take place between Mr. Swinton and co-defendants regarding packaging, cutting, distribution, and other related topics to narcotics distribution, as well as any other evidence that might be governed by Rule 4040(b). [Dkts. 362 (Mot. to Exclude 404(b) Evidence), 363 (Mot. to Exclude Phone Call Evidence), and 385 (Opp. to Mots.)]. Mr. Swinton argues that the content

of the phone calls is inadmissible on two grounds. The first is that any phone calls made while Mr. Swinton was outside Connecticut are subject to and should be excluded as extrinsic evidence under Rule 404(b) and the Fifth Amendment. [Dkt. 363]. The second is that the phone calls should be excluded as untimely noticed under Rule 404(b). [Dkt. 362]. The Court will address each issue in turn.

> A. *The activities in the phone calls are intrinsic evidence of the indicted crimes and not extrinsic character evidence under Rule 404(b).*

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). As such, evidence of an extrinsic crime cannot be introduced as character evidence to prove that an individual acted in any certain way on a specific occasion. There is an exception in a criminal setting, where such evidence may be admissible for "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). If the evidence is admissible under a 404(b)(2) exception, then the prosecutor must provide "reasonable notice of the general nature of any such evidence that the prosecutor intends to offer; and do so before trial." *Id.*

To determine whether Rule 404(b) applies, the relevant evidence must be categorized as either intrinsic or extrinsic to the charged crime. *United States v. Midyett*, 603 F. Supp. 2d 450, 459–60 (E.D.N.Y. 2009). It is well established in the Second Circuit that:

> evidence of uncharged criminal activity is not considered other crimes evidence under Fed.R.Evid. 404(b) if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial.'

*United States v. Nektalov,* 325 F.Supp.2d 367, 370 (S.D.N.Y.2004) (quoting *United States v. Carboni,* 204 F.3d 39, 44 (2d Cir.2000)). The Second Circuit also recognizes that evidence of participation in narcotic related activities is intrinsic evidence to a conspiracy to distribute narcotics. *United States v. Santos,* 541, F.3d 63, 70-71 (2d Cir. 2008) (holding that evidence of narcotic related activities was sufficient to prove that Defendant was aware he was participating in a drug ring which was related to a murder).

In the case at bar, the Government intends to use evidence taken from wiretaps of phones held by Harold Butler, Robert Hall, and Kareem Swinton to allege that Mr. Swinton had knowledge, planned, intended to participate, or identified with the conspiracy from a period from "on or about April 2018 until February 20, 2019…in the District of Connecticut and elsewhere". [Dkt. 385 at 5, 11(quoting [Dkt. 348])]. Mr. Swinton challenges these calls on Fed. R. Evid. 404(b)(1) grounds, claiming that because the calls took place outside the state of Connecticut, they are character evidence extrinsic to his indicted crime and inadmissible. For the following reasons, the Court will deny the motion to exclude phone calls that occurred outside the state of Connecticut.

Mr. Swinton argues that phone calls that occurred outside Connecticut should be excluded on the basis that they are not evidence of the charged conspiracy, but evidence of extrinsic crimes not related to the charged federal

narcotics offenses, which include possession with the intent to distribute, and distribution of 5 kilograms or more of cocaine. The government maintains that the intercepted conversations relate to narcotics trafficking activities such as "obtaining narcotics, cutting narcotics, packaging narcotics, meeting to distribute narcotics, collecting or owing debts for narcotics, selling narcotics, discussing plans to distribute narcotics, avoiding law enforcement detection, or pertain to outside narcotics competition" and will be used to prove that Mr. Swinton knowingly and willingly participated in a conspiracy to distribute narcotics. [Dkt. 385 at 6].

Applying the *Nektalov* factors, 325 F.Supp.2d at 370, the Court finds that the activities described in the phone calls are intrinsic to the charged crimes of narcotics trafficking and the calls should not be categorized as extrinsic evidence under 404(b) because they are inextricably tied to the charged offenses. Evidence that Mr. Swinton participated in activities such as planning, cutting, packaging, distributing, or other involvement with business operations serves as evidence that Mr. Swinton knowingly and willingly participated in a conspiracy to traffic narcotics. Introduction of this evidence does not indict Mr. Swinton of separate crimes, but rather demonstrates that he knew the conspiracy existed, intentionally joined it with specific intent to commit the object of the conspiracy, and knew or could have reasonably foreseen that the conspiracy involved the alleged quantity and type of drugs.

Mr. Swinton claims this precedent does not apply because phone calls made outside of Connecticut are not relevant to the charged conspiracy. [Dkt. 363]. The

Court disagrees because the nature of the conspiracy requires communication between individuals, and regardless of the place the phone calls originated, they were used to distribute narcotics in Connecticut and other places. [Dkt. 248 at 1]. Mr. Swinton is charged with conspiring with 12 other individuals to distribute narcotics, and charged with intent to distribute in the "[d]istrict of Connecticut and elsewhere" *Id*. The phone calls Mr. Swinton aims to exclude discuss these exact intrinsic activities tied to the crime he was indicted of, and further illustrate that Mr. Swinton was a knowing and willing participant in a conspiracy to distribute narcotics in the state of Connecticut. [Dkt. 385 at 6]. Regardless of from where the phone calls were placed, Mr. Swinton does not dispute that the topics discussed all focus on the conspiracy to distribute narcotics in the state of Connecticut, and thus are relevant evidence to Mr. Swinton's involvement in the conspiracy.

Finally, Mr. Swinton's argument that these phone calls will not show one overall conspiracy, but rather several independent conspiracies is not a reason to exclude the phone calls, but instead an argument about jury instructions. *See Kotteakos v. United States*, 328 U.S. 750, 755 (1946) (holding jury instruction that indictment charged just one conspiracy was erroneous where proof established eight or more distinct conspiracies, "separate spokes meeting at a common center"). First, the existence of multiple conspiracies is not a question for the Court to decide at this stage: "[w]hether the government has proved a single conspiracy or has instead proved multiple other independent conspiracies is a question of fact for a properly instructed jury." *United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992). Second, even if the jury does find that there were multiple conspiracies, Mr.

Swinton has not alleged that any prejudice would result from the use of the phone calls. *See United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000) ("because Williams was himself involved in all the conspiratorial conduct proved at trial, there was no prejudicial spillover evidence likely to confuse the jury").

For these reasons, the Court DENIES Mr. Swinton's motion to exclude these phone call conversations. [Dkt. 363].

*B. Even if the phone calls are 404(b) extrinsic evidence, Mr. Swinton has been provided sufficient and timely of the use of that evidence.*

Mr. Swinton also argues that the government has not provided timely or specific notice of the 404(b) evidence, which is counterproductive to the policy's intended purpose of reducing surprise and promoting early resolution on the issue of admissibility. [Dkt. 362] (citing Advisory Committee Note, Fed. R. Evid. 404(b)). Rule 404(b) holds that if any prosecutor intends to introduce this evidence, they must provide "reasonable notice of the general nature of any such evidence that the prosecutor intends to introduce at trial". The Court disagrees that Mr. Swinton was not given timely and reasonable notice of the evidence against him.

Notice timing is flexible, so long as Mr. Swinton is provided the opportunity to object to the admissibility of evidence. Advisory Committee Note, Fed. R. Evid. 404(b). Rule 404(b) requires that a prosecutor only provide "reasonable notice of the general nature" of the evidence he intends to offer at trial.

Mr. Swinton has been given ample notice and time to object to the phone call evidence at issue here. In the case at bar, notice was given to Mr. Swinton before the jury selection date on June 16, 2020, a date which has now been extended to

January 19, 2021 due to the COVID-19 pandemic. [Dkt. 385 at 4, Dkt. 390]. While the government has not identified the specific evidence it will bring against Mr. Swinton since it "has no idea what the defendant's claims at trial will be," it has shared that it might rely on any admissible evidence that Mr. Swinton was:

> obtaining narcotics, cutting narcotics, packaging narcotics, meeting to distribute narcotics, collecting or owing debts for narcotics, selling narcotics, discussing plans to distribute narcotics, avoiding law enforcement detection, or pertain to outside narcotics competition, along with any communications that pertain to knowledge of such distribution or collection activities, outline the respective roles or historic connection among the conspirators, discuss profits earned from distributing narcotics, express commitment to the organization or reassurances of the commitment to or success at criminal activity, and the like.

*Id.* at 6. The Court finds that this list of activities provides Mr. Swinton reasonable notice of the types of actions the government plans to introduce into evidence. Additionally, given the recent Order barring any in-court proceedings due to the COVID-19 pandemic until November 2020, Mr. Swinton has been given ample time and notice to object to the admission of this evidence. Mr. Swinton was notified of the types of activities which would be entered into evidence in Docket 385, filed on April 30, 2020. This would give Mr. Swinton nearly nine months to object. As a result, the Court denies Mr. Swinton's Dkt. 362 and 363 motions to exclude the phone call evidence on the grounds that it is extrinsic evidence for which 404(b) notice has not been given both because the evidence is intrinsic to the indicted crimes, and because the Government has provided Mr. Swinton with adequate notice of the evidence to be used against him.

### III. Motion *in Limine* Re: DEA Agent Expert

Mr. Swinton seeks (1) an order excluding any law enforcement or case agent from testifying based on her opinion of what the intercepted communications mean as a whole, rather than what specific words mean; (2) an order prohibiting the case agent from testifying as an officer expert; and (3) an instruction to the government to caution any law enforcement witness qualified as an expert not to offer any opinion or speculation that would otherwise be prohibited as testimony. [Dkt. 366 at 1-2; Dkt. 365]. The government responds that it intends to call a cooperating witness to testify about cell phone communications in furtherance of the conspiracy. [Dkt. 385]. The government claims that the use of a specialized DEA agent is necessary to "assist the jury with its interpretation of the intercepted communications, which contain jargon, codes, and language that the jury may otherwise be at a loss to understand the significance." [Dkt.385 at 32]. The government intends to call Special Agent Raymond Walczyk, who has no involvement in the investigation, as an expert to offer his opinion regarding the manner, means, and common practices of narcotics traffickers and narcotics trafficking organizations, as well as details regarding the basis of those opinions. [Dkt. 366 at 3].

First, since the government states that it does not intend to call any officer involved in the case as an expert witness, [Dkt. 385 at 32], the Court denies as moot Mr. Swinton's motion *in limine* at Docket 366 to the extent it requests an order prohibiting an involved law enforcement officer from testifying as an expert witness.

Next, the Court agrees with Mr. Swinton that evidence based on speculation is not admissible, *see* Fed. R. Evid. 603 and 701, and therefore grants his motion *in limine* to exclude testimony based on speculation. [Dkt. 365]. The Court notifies both parties that any evidence discussed should follow the Federal Rules of Evidence and be free of speculation.

Finally, the Court addresses Mr. Swinton's motion for an order excluding any law enforcement testifying based upon speculation and what she thinks intercepted text messages – rather than words – mean.

In situations where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" a court can rely on a witness with knowledge, skill, experience, training, or education as an expert. Fed. R. Evid. 702. Testimony is properly characterized as "expert testimony" only if it concerns matters that the average juror is not capable of understanding on his or her own. *United States v. Mejia*, 545 F.3d 179, 190 (2nd Cir. 2008) *quoting* Fed. R. Evid. 702. In providing said evidence, "an expert must form his own opinions by applying his extensive experience and reliable methodology to the inadmissible materials". *Id.* This Circuit historically allows law enforcement officers to testify as expert witnesses to explain the meaning of code. *Id. discussing United States v. Levasseur,* 816 F.2d 37, 45 (2d Cir. 1987)(finding that there was no error in allowing uninvolved FBI agents to testify as expert witnesses regarding coded text messages pertaining to building bombs). *See also United States v. Locascio,* 6 F.3d 924, 936 (2d Cir. 1993) (upholding an FBI agent's expert testimony about the internal operating rules of organized crime families, the

meaning of recorded conversations, and the identification of members of the Gambino crime family.); *Dang Vang v. Toyed,* 944 F.2d 476, 481-482 (9th Cir. 1991) (upholding district court's finding that law enforcement officers may be equipped by experience and training to speak to the operation, symbols, jargon, and internal structure of criminal organizations.) The Court finds no reason to not follow precedent, as the average citizen may be unaware of the slang and language involved with narcotics and would benefit from an expert opinion on how to interpret it.

But an officer expert might "stray from the scope of his expertise" by "testify[ing] about the meaning of conversations in general, beyond the interpretation of code words" or by "interpret[ing] ambiguous slang terms that only at first glance might appear to be code or jargon." *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003), *quoted* in *Meija*, 545 F.3d at 192-93. Therefore, the Court grants Mr. Swinton's motion for an order for an instruction to the Government. [Dkt. 366]. The Government is instructed that any expert must limit the scope of his or her testimony to the interpretation of code words and must not speculate about the meaning of conversations in general.

Additionally, the government must provide the basis for Agent Walczyk's opinion and his expected conclusions, including any specifically relevant experience and training. *See* Fed. R. Crim. P. 16(a)1(G) (citing Fed. R. Evid. 702, 703, 705); *United States v. Valentin*, No. 3:14-CR-55 (VLB), 2016 WL 1211304, at *2 (D. Conn. Mar. 25, 2016). The Court will not permit an expert to draw inferences

where more than one inference could be drawn by the jury based on the education and experience to which the expert testified.

### IV. Motion in Limine Re: Pole Camera Photographs

Mr. Swinton requests that the Court conduct a hearing outside of the presence of the jury regarding the admissibility of pole camera photographs allegedly showing him entering a business known as Hat Boyz in Norwich, CT on December 8, 2018 at approximately 6:23 pm. [Dkt. 367 at 1]. Mr. Swinton claims that the jury will not reasonably be able to determine that the evidence conclusively places him at that specific location due to the low quality of the photos. [Dkt. 367 at 1]. Therefore Mr. Swinton claims that the photos should not be admitted under the Federal Rules of Evidence for not meeting the standards of Rule 401. [*Id.* at 2]. The Government counters that a hearing is unnecessary because the photos are relevant to establishing Mr. Swinton's involvement with the conspiracy, and that, when viewed in conjunction with intercepted communications between defendants, the photographs help to illustrate his involvement with the conspiracy. [Dkt. 385 at 36].

Regardless of form, evidence is admissible in court only if it is relevant to the specific issues at trial. Fed. R. Evid. 402(b) ("Irrelevant evidence is not admissible."). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist," though "[t]he court may admit the proposed evidence on the condition that the proof be

introduced later." Fed. R. Evid. 104(b). "When faced with a question of conditional relevance, the district court should "examine[ ] all the evidence in the case and decide[ ] whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." *United States v. Coplan*, 703 F.3d 46, 81 (2d Cir. 2012) (quoting *Huddleston vs. United States*, 485 U.S. 681, 690 (1988)). "The court must conduct any hearing on a preliminary question so that the jury cannot hear it if… justice so requires." Fed. R. Evid. 104(c).

In the case at bar, the digital photographs may only be admitted in Court if the government can prove that they are relevant to the issue of whether Mr. Swinton was involved in a conspiracy to distribute drugs. For the photos to make the fact of drug conspiracy more or less probable, the government would have to establish that the individual in the photograph is in fact Mr. Swinton. The conditional fact, then, is that the individual in the photograph is Mr. Swinton.

While there is no brite line as to when a photo is "clear enough", it is impossible to clearly identify the individual in the photograph when viewed alone. Were it to view this photo in isolation, the Court would agree with Mr. Swinton that these photos would be inadmissible as irrelevant. But "pieces of evidence must be viewed not in isolation but in conjunction." *United States v. Brown,* 776 F.2d 397, 403 (2d Cir. 1985) (quoting *United States v. Geaney,* 417 F.2d 1116, 1121 (2 Cir. The government claims that, in the context of other evidence it will offer, there is sufficient proof the depicted individual is Mr. Swinton. [Dkt. 385 at 36-37]. It does not provide any other evidence with its opposition memorandum, however. *Id.* The Court sees no reason to take the Government's claim of relevance on faith. While

the supporting evidence may be sufficient to bolster the claim that the individual in the photos is Mr. Swinton, the Government has not provided such evidence in their brief. The only details discernable from the photographs is that an African American male is standing outside the Hat Boyz. Without any other identifying characteristics, there exists a real danger that the photographs are irrelevant and unduly prejudicial if shown to a jury. As such, the Court will GRANT in part and DENY in part the motion for an independent hearing to determine whether these photographs are admissible.

The Government must file corroborating evidence on or before August 28, 2020, at which point the Court will determine if a hearing is necessary.

### V. Conclusion

For the reasons and subject to the limitations state above, Mr. Swinton's Motion *in limine* to exclude the government from using conversations not directly charged [Dkt. 363] is DENIED. Mr. Swinton's motion to exclude 404(b) evidence is DENIED. [Dkt. 362]. The motion to exclude testimony based on speculation [Dkt. 365] is GRANTED. The motion concerning DEA Agent expert testimony [Dkt. 366] is GRANTED in part and DENIED in part. Mr. Swinton's motion for a special hearing concerning pole camera photographs [Dkt. 367] is GRANTED in part and DENIED in part. The Government has until August 28, 2020 to file evidence corroborating the identity of Mr. Swinton in the photo, at which point the Court will determine whether a hearing is necessary.

IT IS SO ORDERED.

/s/
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: August 14, 2020**