# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 3:19-cr-65 (JAM) |
| KAREEM SWINTON,<br>*Defendant*. | |

## RULING ON GOVERNMENT'S MOTION *IN LIMINE* WITH RESPECT TO RULE 404(b) EVIDENCE

The Government has charged defendant Kareem Swinton with drug trafficking offenses arising from his alleged participation in a conspiracy to distribute fentanyl, heroin, powder cocaine, and cocaine base between April 2018 and February 2019. The Government intends to have a cooperating witness testify that he delivered seven kilograms of narcotics to Swinton in January 2019 and that he later attempted to collect payment for this delivery. In an effort to prove that the narcotics supplied by the cooperating witness to Swinton in January 2019 contained fentanyl, the Government has moved *in limine* pursuant to Fed. R. Evid. 404(b) to introduce evidence of six other instances between May and November 2019 when narcotics possessed by the cooperating witness tested positive for the presence of fentanyl.

For the reasons below, I conclude that the proposed evidence is relevant and that its probative value is not substantially outweighed by any danger of unfair prejudice to Swinton. I also conclude that the proposed evidence is proper under Rule 404(b) to the extent that it is offered to prove the identity of the substance that was transacted between the cooperating witness and Swinton in January 2019. Therefore, I will admit the Government's evidence subject to a limiting and cautionary instruction as described in this ruling.

## BACKGROUND

On February 2, 2022, a federal grand jury returned a third superseding indictment charging Kareem Swinton with two drug trafficking offenses.[1] The first count charges Swinton with conspiracy to possess with intent to distribute and to distribute fentanyl, heroin, powder cocaine, and cocaine base between April 2018 and February 2019. The indictment alleges with respect to this count that Swinton "knew from his own conduct as a member of the narcotics conspiracy … and from the reasonably foreseeable conduct of other members of that conspiracy that the conspiracy involved 400 grams or more of a mixture and substance containing a detectable amount of … ("fentanyl"), a Schedule II controlled substance."[2] The second count charges Swinton with possession with intent to distribute and distribution of a controlled substance on or about December 8, 2018.

The fentanyl charge against Swinton stems from an alleged drug deal in Baltimore, Maryland that occurred in January 2019. The Government plans to elicit testimony at trial regarding this drug deal from a cooperating witness (CW) who worked as a drug runner, delivering large quantities of narcotics in exchange for payment.[3] The CW is expected to testify that he traveled to Baltimore in January 2019 and supplied seven kilograms of narcotics to Swinton.[4] He is further expected to testify that he later attempted to collect payment from Swinton for the sale of these narcotics.[5] The CW ultimately pleaded guilty to conspiracy to distribute and to possess with intent to distribute 400 grams or more of fentanyl, and agreed to cooperate with the Government.[6] The Government plans to corroborate the CW's account of the

---

[1] Doc. #789.
[2] *Id*. at 2.
[3] Doc. #822 at 6 (Government's supplemental notice of intent to offer evidence pursuant to Fed. R. Evid. 404(b)).
[4] *Id*. at 6-7.
[5] *Id.* at 6.
[6] *Ibid.*

January 2019 drug deal with bank records showing that the CW traveled to Baltimore and with evidence of intercepted communications which purportedly show that Swinton was concerned about the strength of his narcotic product and was seeking to purchase fentanyl in the days leading up to his meeting with the CW.[7]

The rub is that the CW is also expected to testify that he did not know what type of narcotic substance he delivered to Swinton in January 2019.[8] And because the Government never seized and tested the narcotics at issue in that transaction, it cannot offer any direct proof that they contained fentanyl. Instead, the Government proposes to offer evidence that on six other occasions between May and November 2019, the CW consistently supplied narcotics containing fentanyl. In particular, the Government intends to call several law enforcement witnesses with personal knowledge of the following instances in which substantial quantities of narcotics seized from the CW and subsequently laboratory-tested were determined to contain fentanyl:

- a controlled purchase of almost a kilogram of narcotics from the CW in May 2019;
- a controlled purchase of almost a kilogram of narcotics from the CW in July 2019;
- a trash pull from the CW's hotel room showing that he was distributing narcotics in August 2019;
- the seizure of almost four kilograms of narcotics from a vehicle immediately after the CW supplied narcotics to the vehicle's occupant in August 2019;
- the seizure of almost two kilograms of narcotics from the CW's vehicle in September 2019; and
- the seizure of almost seven kilograms of narcotics and more than 3,000 pills from a vehicle after these narcotics were removed from a stash house used by the CW.[9]

The Government's motion states that it will conduct an "exceedingly streamlined direct examination of each witness to establish the foregoing events."[10] The Government additionally represented at the pre-trial conference that it will emphasize to the jury that Swinton had nothing

---

[7] *Id*. at 7.
[8] *Ibid.*
[9] *Id*. at 7-8.
[10] *Id*. at 8.

to do with these events involving the CW—all of which occurred after the conspiracy terminated with Swinton's arrest in February 2019.

The Government seeks to use this evidence to establish a pattern of criminal conduct on the part of the CW supporting the inference that the narcotics the CW sold to Swinton contained fentanyl.[11] When I inquired about the similarity of the source, packaging, and characteristics of the narcotics the CW delivered in January 2019 and on these subsequent occasions, the Government represented that it expected the CW would testify that the narcotics he delivered were all supplied by the same source, came in identical or substantially similar packaging, and—on the several occasions when the CW cut into the narcotic product to offer a sample for potential buyers—had a uniform consistency (compacted powder) and color (white or off-white).

Swinton objects to the introduction of this evidence of subsequent drug trafficking conduct on the part of the CW.[12] He contends that these later events are probative only insofar as they show that the CW had a propensity for selling fentanyl and that he is guilty by association, which is forbidden character evidence under Rule 404(b) and unduly prejudicial under Rule 403.[13]

## DISCUSSION

As an initial matter, I will lay out the evidentiary standards that govern my consideration of this motion. Evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed R. Evid. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is substantially

---

[11] Doc. #837 at 3 (Government's reply brief).
[12] Doc. #835.
[13] *Id*. at 6.

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Federal Rules of Evidence separately prohibit the introduction of improper character evidence. "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). On the other hand, such "other act" evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Second Circuit follows what it has described as an "inclusionary approach" to allow the admission of "'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Moran-Toala*, 726 F.3d 334, 345 (2d Cir. 2013). The factors relevant to determining the admissibility of "other act" evidence include whether (1) the evidence is offered for a proper purpose, (2) the evidence is relevant to a disputed issue pursuant to Rule 402, (3) the probative value of the evidence is substantially outweighed by its potential for unfair prejudice pursuant to Rule 403, and (4) the evidence was admitted in conjunction with an appropriate limiting instruction, if requested. *Ibid.*; *see also United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (same).

More recently, the Second Circuit has cautioned that "a district court may not freely admit evidence of conduct simply because it relates to the charged crimes or the government offers it for a purpose other than to demonstrate the defendant's propensity to commit the alleged conduct." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022). It has cautioned that "[o]ur

inclusionary rule is not a carte blanche to admit prejudicial extrinsic act evidence that is offered

to prove propensity, or otherwise to allow propensity evidence in sheep's clothing." *Ibid.* "If

necessary, the government may introduce evidence of uncharged criminal conduct to complete

the story of the crime on trial, not to tell a new one" involving a "grimmer narrative" or "conduct

more inflammatory than the charged crime." *Id.* at 552–53.

      In light of these standards, I conclude that evidence of the six occasions on which the CW

possessed or distributed narcotics containing fentanyl in the ten months subsequent to January

2019 is offered for a proper purpose and is relevant to show the identity of the narcotics

allegedly sold by the CW to Swinton. The Government seeks to offer evidence of these

subsequent narcotics seizures—which all involved kilogram-quantities of narcotics containing

fentanyl from the same source, in substantially similar packages, and with the same color and

consistency—to show that the narcotics the CW delivered to Swinton (from that same source and

packaged in that same manner) also contained fentanyl. Showing the chemical "identity" of the

narcotics allegedly purchased by Swinton is a proper purpose. *See* Rule 404(b)(2) (including

identity as a permitted use for evidence of other crimes); *United States v. Hamilton*, 334 F.3d

170, 185 (2d Cir. 2003) (Rule 404(b) permits the introduction of "other instances in which [the

defendant] distributed controlled substances … to show a pattern of actions contrary to his

suggestion that what he distributed [on a particular occasion] was not a controlled substance").

Moreover, it goes to a central and disputed issue on which the Government bears the burden of

proof. The Government is not asking the jury to simply conclude that the CW acted in

accordance with some character trait or disposition to sell fentanyl on the particular occasion he

allegedly sold narcotics to Swinton. Instead, the Government is offering evidence from which the

jury could draw an inference about what kind of narcotics the CW allegedly delivered to Swinton in January 2019. That is permissible under Rule 404(b).

I further conclude that the probative value of this evidence is not substantially outweighed by its potential for unfair prejudice or other confusion. As an initial matter, the potential for prejudice is significantly mitigated by the fact that this evidence does not involve Swinton at all, and the conduct is "not any more sensational or disturbing than the charged crime[s]" of trafficking in fentanyl and other narcotics. *United States v. Rosemound*, 958 F.3d 111, 125 (2d Cir. 2020).

To the extent that the evidence suggests bad character, it does so for the CW—not for Swinton. Indeed, Swinton will undoubtedly seek to challenge the CW's credibility in part by showing his continued drug trafficking activity, as well as his motive to reduce his criminal liability by cooperating with the Government. Further, the Government has represented that it will make clear that these subsequent seizures of narcotics involving the CW had nothing to do with Swinton and are relevant solely insofar as they shed light on what Swinton obtained from the CW in January 2019.

I will also give an appropriate limiting instruction upon request to guide the jury's evaluation of this evidence. To the extent that Swinton challenges as prejudicial the inference that he purchased fentanyl from the CW, however, such prejudice is indistinguishable from the relevance of the evidence to show his guilt with respect to the charged offense and therefore offers no basis for exclusion.

Finally, the Government has represented that it will present this portion of its case in an efficient and streamlined manner. On the basis of the Government's representations and my further questions concerning the means by which the Government plans to elicit this evidence, I

conclude that the risk of confusing the issues, misleading the jury, undue delay, or wasting time on a collateral excursion does not substantially outweigh the probative value of the evidence.

### CONCLUSION

For the reasons explained above, the Court GRANTS the Government's motion *in limine* to introduce evidence of subsequent conduct by a cooperating witness (Doc. #822). Subject to the Government's clarification at trial of the limited relevance of this evidence and a further limiting instruction by the Court upon request, the Government may introduce evidence of the cooperating witness's narcotics-related activity and the presence of fentanyl in substances possessed or transacted by the cooperating witness after January 2019.

It is so ordered.

Dated at New Haven, Connecticut this 14th day of July 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge